UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SYLVESTER WILLIAMS                                                    Plaintiff

v.                                              Civil Action No. 3:17-cv-00273-RGJ

DENIS MCDONOUGH, SECRETARY OF                                        Defendant
THE UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sylvester Williams ("Williams") filed a 31-count complaint alleging workplace discrimination, disability discrimination and retaliation, and retaliation for engaging in a protected activity by Denis McDonough, Secretary of the United States Department of Veteran Affairs ("VA").  [DE 1].  The VA moved for summary judgment on all counts [DE 51].  Williams responded [DE 52 and the VA replied [DE 55].  Briefing is complete, and the matter is ripe.  For the reasons below, the Court **GRANTS** the VA's Motion for Summary Judgment [DE 51].

## I.   BACKGROUND

In 1998, Williams, an African American man, began employment with the VA at the Louisville VA Medical Center.  [DE 1 at 2].  On August 4, 2008, while working in the Emergency Department, Williams allegedly injured his back.  [DE 52 at 936].  As a result, Williams took a position in Interventional Radiology ("IR") in January 2009, which was less physically demanding.  [DE 1 at 3].  In August 2009, Williams underwent surgery as a result of his back injury.  [DE 52 at 936].  Williams also began working in Peripherally Inserted Central Catheter Program.  [DE 1 at 3].  Due to a change in internal procedures and the discovery of a workplace relationship between Williams' supervisor and a subordinate employee, the VA aligned Williams

1

under manager Terry Windell ("Windell") in the Medical Procedures Unit ("MPU") in December 2013.  [DE 52 at 937].  At this time, Williams was the only African American RN in the MPU.  [DE 1 at 5].  Williams alleges that work in the MPU was more strenuous, which caused him to reinjure his back in January 2014.  [DE 52 at 937].

As a result of his back injury, Williams' doctors placed him on limited duty in April 2014 and light duty in September 2014.  [DE 1 at 14].  While on light duty, Williams alleges that he was subject to discriminatory behavior and was forced to file an Equal Employment Opportunity ("EEO") complaint.  [*Id.* at 15].  In July 2014, Williams and his supervisor submitted a request for an ergonomic evaluation.  [*Id.* at 17].  The results suggested Williams be placed in a permanent workstation with lumbar support and leg elevation.  [*Id.* at 18].  Because there were no positions that could accommodate Williams in MPU, he accepted temporary position as a shuttle driver.  [*Id.* at 18].  In July 2014, the VA offered Williams a limited position back in MPU and he was instructed to report back to the unit.  [*Id.* at 25].  However, Williams declined the position because he believed it would place him back in a discriminatory work environment.  [*Id.*].  In December 2015, Williams was placed at maximum medical improvement with permanent physical restrictions.  [*Id.* at 26].  In February 2016, the VA issued a proposed discharge letter to Williams for being "Absent Without Leave" ("AWOL"), insubordinate, and for conduct unbecoming a federal employee because he failed to report to the MPU.  [*Id.*].

Williams also alleges that he was discriminated against regarding his time off, potential lateral job moves, failure to receive performance evaluations, and placement on on-call lists.  [DE 1].  Williams alleges that on more than one occasion, he was marked as AWOL while another employee who identified as a white male never received a reprimand under similar circumstances.  [DE 1 at 7–8].  Williams also alleges that he was taken off the on-call list while other non-African

American nurses remained on the list. [*Id.* at 9]. The VA asserted that he was removed because they could not trust Williams to show up. [*Id.*]. Williams has also alleges that the VA began a retaliatory campaign against him because he contacted an EEO counselor to file a complaint. [DE 52 at 937].

## II.   STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### III.   DISCUSSION

VA has moved for summary judgment on all 31 Counts.  [DE 51].  Williams responded arguing that there are issues of fact for the jury to resolve that relate to each claim.  [DE 52].  Due to the number of claims, the Court will address certain counts by group.

#### A.  Exhaustion: Counts 26–31

The VA argues that Counts 26–31 should be dismissed because they were not exhausted. [DE 51].  Federal employees' authorization to sue the federal government for violation of the civil rights laws is conditioned on the "plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'"  *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) (quoting *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) and *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)).  One of the exhaustion requirements is that the "aggrieved person must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory."  *Id*. (citing 29 C.F.R. § 1614.105(a)(1)).  "Failure to comply with this requirement is grounds for dismissal."  *Hurst v. Dep't of Veterans Affs.*, No. 18-3185, 2018 WL 4178851, at *1 (6th Cir. July 19, 2018).

Williams amended his EEO complaint four times after he made initial contact with an EEO counselor on March 13, 2014.  [DE 51-3 at 573].  Williams' amended EEO complaint lists 25 separate claims that occurred through April 13, 2015.  [*Id.* at 574, 600].  However, Williams dates

claims 26–31 from June 29 2015 to February 9, 2016.  [DE 1].  Because Counts 26–31 were not included in Williams' EEO complaint, they cannot be exhausted.  *See Horton*, 369 F.3d at 910. Williams' failure to exhaust Counts 26–31 is grounds for dismissal.  *See Hurst*, 2018 WL 4178851, at *1.  Accordingly, the VA's Motion for Summary Judgment [DE 51] as to Counts 26–31 is **GRANTED**.[1]

### B.  Disability Discrimination and Retaliation: Counts 1–25

Williams alleges the VA discriminated against him in Counts 1–25.  [DE 1].  Williams also alleges that he was discriminatorily retaliated against in Counts 4–7 and 9–25.  [*Id.*].  The VA argues that these counts must be dismissed to the extent Williams alleges discrimination based on a disability and retaliation related to his disability because Williams conceded that he was only discriminated against on the basis of race.  [DE 51 at 382–83].

During Williams' deposition, he repeatedly identified race as the only basis of discrimination against him.  [DE 51-4, Williams Dep. Tr. at 774–75].

Q: Is your allegation the discrimination, retaliation and harassment all motivated by your race?

A: Yes.

Q: Were they motivated by any other factor at all?

A: Well, you know it, I, I think, again, you know, confirmation bias, there is some bias here, so definitely there is some confirmation bias here that's resulted in my treatment. So, I think that, excuse me, some form of confirmation bias is, is, is, is warranted here, too.

Q: Is that a confirmation bias on the basis of race as well?

A: Yes.

Q: Is there any other factor that you think motivated any of the discrimination, or retaliation, or harassment that you allege in your complaint?

---

[1] Because the Court will dismiss Counts 26–31, the remainder of this Order will only discuss Counts 1–25.

A: Not that I know of.

[*Id.*].  Throughout his deposition, Williams only reiterated race as the basis of discrimination and retaliation.  [*Id.* at 652, 671–72, 676, 699–704, 681–82, 685–86, 698–700, 703, 713–14, 727–28, 738, 747, 751–54, 758, 762–63].

Summary judgment is appropriate when a plaintiff brings an employment discrimination and retaliation claim but denies essential elements of those claims in their deposition testimony.  *See Merard v. Magic Burgers, LLC.*, No. 6:19-CV-1864-PGB-LRH, 2021 WL 2982405, at *2–3 (M.D. Fla. Apr. 1, 2021); *see also Lykins v. CertainTeed Corp.*, 555 F. App'x 791, 795–96 (10th Cir. 2014) (affirming grant of summary judgment on retaliatory discharge claim where defendant's motion rested on plaintiff's admissions in deposition testimony being contradictory to a necessary element of his claim).  A plaintiff could not assert a claim for disability discrimination or retaliation without basing them on discriminatory conduct related to a disability.  *See* 42 U.S.C. 12112; KRS 344.030(2).

To overcome his own testimony, Williams implies in his sworn response that his disability was also a motivating factor behind the VA's discrimination and retaliation.  [DE 52 at 961 ("The Movant claims Williams asserted in sworn testimony that race was the only thing that motivated any discrimination or retaliation . . . [r]ace was the main motivation of discrimination and race may be the reason they discounted/ignored his disability.")].  He alleges that a jury should be allowed to choose what to believe from his testimony.  [*Id.*].  However, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)).  Williams' sworn statement cannot create an issue of fact by contradicting his deposition testimony after the

6

VA filed its motion for summary judgment. *See id.* In light of Williams' own testimony [DE 51-4, Williams Dep. Tr. at 774–75], he has failed to create an issue of fact that would allow a reasonable juror to find in his favor. *See Liberty Lobby*, 477 U.S. at 252.

Despite Williams' admission that the VA was not motivated by animus towards his alleged disability, Williams' disability discrimination claims would fail for the same reasons explained below in Section III.C.i  To establish a *prima facie* case for disability discrimination, a plaintiff must show that "she was disabled; she was otherwise qualified to perform the essential functions of her job; she suffered an adverse employment action; her employer knew or had reason to know of her disability; and either the position remained open or a non-disabled person replaced her." *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004)).

Williams cannot plead a *prima facie* case for disability discrimination without demonstrating that he suffered an adverse employment action. *Id.* As explained in Section III.C.i, Williams has not demonstrated that he suffered an adverse action. Even if Williams could state a *prima facie* case, there is no evidence that he could carry his burden to show that the VA's legitimate, nondiscriminatory reasons for their actions were pretextual. *See Brohm v. JH Props., Inc.*, 149 F.3d 517, 520–21 (6th Cir. 1998). These legitimate, nondiscriminatory reasons range from persistent tardiness to failure to meet standard competencies. [DE 53]. Accordingly, the VA's Motion for Summary Judgment is **GRANTED** as to Counts 1–25 to the extent that they assert any claim for discrimination or retaliation based on Williams' alleged disability.

### C.  Title VII Employment Discrimination Claims: Counts 1–25

Williams claims that the VA discriminated against him in violation of 42 U.S.C. §§ 2000e *et seq.* [DE 1 at 1]. The VA contends that Williams' claims should be dismissed because it had

legitimate, nondiscriminatory reasons for its actions and because Williams has failed to identify an adverse action taken against him.  [DE 51].

> Title VII makes it unlawful for an employer to
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.   Any person who believes they have been the subject of discrimination in violation of this statute may bring an action against the "employer." *Id.* § 2000e-5(b).   Claims brought pursuant to Title VII's antidiscrimination provision are subject to the tripartite burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).   Under this framework, the plaintiff bears the initial "not onerous" burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.  *Texas Dep't. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.  *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).   "An adverse employment action is an action by the employer that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits.'"  *White*, 533 F.3d at 402 (citing *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761 (1998)).

Once the plaintiff establishes this *prima facie* case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 253.  Finally, if the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination.  *Id.*  "Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *White*, 533 F.3d at 392 (citing *id.* at 256).

          *i.*  Prima Facie *Case*

The VA argues that Williams has failed to establish a *prima facie* case for employment discrimination.  [DE 51].  The VA does not dispute that Williams, an African American, is a member of a protected class.  [*Id.*].  However, the VA argues that Williams was unqualified for his job, suffered no adverse employment decision, and was not replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.  [*Id.*].

In Count I, Williams alleges that his lateral move from IR to MPU was discriminatory based on his race and a disability protected by the Americans with Disabilities Act ("ADA").  [DE 1 at 4–6].  Amongst other arguments, the VA contends that Count I should be dismissed because the VA had a legitimate, nondiscriminatory reason for its actions.  [DE 51 at 394].

Around late 2013, the VA became aware of a romantic relationship between Debbie Logan ("Logan") and her supervisor Dave Berger (Berger").  [DE 1 at 4].  Logan and Williams were the only RNs stationed in IR under the supervision of Berger.  [*Id.*].  At the same time, supervisors over the IR nurses became aware that their nurses were having trouble delivering moderate

9

sedation to patients.  [DE 51-9, Rothschild Dep. Tr. at 835–36].  This led to concerns that there may be issues with moderate pain sedation in other units.  [*Id.* at 825–27].  Dr. Marylee Rothschild ("Rothschild") testified that moderate pain sedation needed to be standardized throughout the hospital.  [*Id.*].  After discovering the relationship between Logan and Berger, Rothschild decided to move Logan and Williams to MPU.  [*Id.* at 836–47].  The primary reason for Logan and Williams' shift to MPU was the relationship between Logan and Berger, but Rothschild was also motivated by the need to standardize moderate pain sedation.  [*Id.* at 836].

Moderate pain sedation could not be standardized in IR because Berger, the only IR supervisor, was not a nurse and nurses, like Williams needed other nurses as supervisors.  [*Id.* at 833–34, 844].  Accordingly, Williams and Logan were reassigned to Terry Windell's supervision in MPU.  [DE 51-7, 2014 Windell Dep. Tr. at 803].  Windell had received complaints regarding Williams' performance between November 2013 and February 2014.  [DE 51-10, 2016 Windell Dep. Tr. at 860–62].  MPU had more sedation cases, so Windell thought Williams would get adequate training in MPU and be more proficient when he returned to IR.  [DE 51-7, 2014 Windell Dep. Tr. at 803].  The VA testified that once Williams and Logan were moved from IR, problems with documentation and moderate sedation ended, patient complaints in IR about not receiving pain medication ended, and audits showed 100% compliance, and the doctor who was then the IR director reported that IR nursing care improved significantly.  [DE 51-1 at 492].

Count 1 of Williams' Complaint must fail because Williams has suffered no adverse action.  In this circuit, "a purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purposes, a conclusion consistent with the authority from our sister circuits."  *Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007) (citation omitted).  Although Williams was moved from IR to

MPU, he did not suffer a demotion or a decrease in his salary. [DE 51-4, Williams Dep. Tr. at 623]. A nurse who is moved to a different unit without a decrease in pay does not suffer an adverse employment action. *See Conner v. Nicholson*, No. 4:04-CV-100, 2006 WL 1722230, at *9 (W.D. Mich. June 21, 2006). Accordingly, Williams has failed to demonstrate his *prima facie* case for Count 1.

Counts 2, 4, 10, 13, 14, 15, 18, and 20 all relate to Williams' AWOL designations and reprimands for failure to attend work at the VA. [DE 1]. Count 2 relates to an AWOL designation on January 29, 2014. [*Id.* at 7]. Count 4 involves an AWOL designation of March 5, 2014. [*Id.* at 8]. Count 10 relates to an email he received from a VA employee alleging he was not at work when he was with a patient. [*Id.* at 12]. Williams does not allege any action was taken. Count 13 relates to an instance on April 4, 2014 where a VA employee required Williams to provide a doctor's note for an upcoming absence. [*Id.* at 13]. Count 14 involves a proposed reprimand for failing to follow the AWOL policies. [*Id.*]. Count 15 relates to an incident on April 17, 2014 where a VA employee reported Williams to his union for failing to attend work. [*Id.* at 14]. Count 18 involves an incident on May 16, 2014 where Williams was late to work. [*Id.* at 16]. Count 20 relates to a proposed reprimand for Williams' AWOL status and failure to follow instructions. [*Id.* at 17].

De minimis employment actions, such as receiving an email about a potential absence or requesting a doctor's note, do not constitute adverse actions. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). Being marked AWOL does not amount to an adverse action. Similarly, a proposed reprimand [DE 51-1 at 510] does not result in an adverse employment action such as loss of pay. *See White*, 533 F.3d at 402. Williams has not provided evidence that being marked AWOL or receiving a proposed reprimand for his AWOL designations would significantly

affect his employment or wages. *See Sebastian v. A Tech. Advantage, Inc.*, No. 3:10-CV-00483-TBR, 2011 WL 3360657, at *3 (W.D. Ky. Aug. 4, 2011).  Accordingly, Williams has failed to state a *prima facie* case for Counts 2, 4, 10, 13, 14, 15, 18, and 20 because the VA.

Counts 3, 6, 7, 8, and 24 all relate to Williams' removal from the PICC program or the VA's denial of his move to a similar unit or position.  [DE 1].  Count 3 relates to Williams' removal from the PICC program on January 16, 2014.  [*Id.* at 7].  Count 6 involves an instance where Williams was asked to insert a catheter outside of the MPU.  [*Id.* at 9].  Williams notes that Windell "was furious" after learning he had inserted the catheter.  [*Id.*].  Count 7 relates to a "fact finding" meeting Williams was required to attend after being accused of inserting a catheter while he was prohibited to do so.  [*Id.* at 10].  Count 8 involves the denial of Williams' request to cover another nurse's shift while she was on vacation.  [*Id.* at 10–11].  Count 24 relates to Williams' denial for a lateral transfer back to the PICC program.  [*Id.* at 20].

The Sixth Circuit has held that the "narrowing of responsibilities without a corresponding decrease in pay or benefits, cannot be labeled an objectively adverse employment action." *Finley v. City of Trotwood*, 503 F. App'x 449, 454 (6th Cir. 2012). De minimis employment actions like a temporary move or ire from coworkers do not constitute adverse employment actions. *See Bowman*, 220 F.3d at 462.  Moreover, a lateral job move does not constitute an adverse employment action. *See Dowell v. Speer*, No. 3:14-CV-01314, 2017 WL 1108650, at *11 (M.D. Tenn. Mar. 23, 2017).  Removal from programs or denial of a lateral move do not amount to adverse employment actions.  Williams did not receive a decrease in pay when he was moved to MPU.  [DE 51-4, Williams Dep. Tr. at 623].  Williams has not identified evidence that any of these counts resulted in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

12

significant change in benefits." *White*, 533 F.3d at 402 (quoting *White v. Burlington Northern & Santa Fe Ry.*, 364 F.3d 789, 795 (6th Cir.2004)).  Accordingly, Williams has not established a *prima facie* case for Counts 3, 6, 7, 8, and 24.

Count 5 involves Williams' removal from the on-call list on January 31, 2014.  [DE 1 at 9].  Here, Williams has failed to identify a similarly situated comparator outside of the protected class.  *See Arendale*, 519 F.3d at 603.  The VA noted that Logan, Williams' coworker who is outside of his protected class, was also taken off the on-call list.  [DE 51 at 413].  The VA asserts that Logan did not have Williams' tardiness issues but had failed to document cases in IR and did not have competency with sedation.  [*Id.*].  Failure to identify a comparator outside of the protected class who received favorable treatment can be grounds for summary judgment.  *Aldridge v. City of Memphis*, No. 05-2966-STA-DKV, 2008 WL 2999557, at *3 (W.D. Tenn. July 31, 2008), *aff'd.* 404 F. App'x 29 (6th Cir. 2010).  Accordingly, Williams has failed to establish a *prima facie* case for Count 5.

Counts 9 and 12 relate to Williams' performance evaluation.  [DE 1].  Count 9 involves an evaluation received on March 17, 2014, where Williams was requested to provide input on the evaluation.  [*Id.* at 11].  Count 12 involves an evaluation by Berger that was completed on April 23, 2014.  [*Id.* at 12].  "[A] negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007).  "Thus, to characterize a negative performance evaluation as an adverse employment action 'the plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation.'"  *White*, 533 F.3d at 402 (quoting *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 789 (6th Cir. 2000)).  Williams lost no pay and was rated as "satisfactory" in

13

his evaluation. [DE 51 at 45–46]. A "satisfactory" evaluation does not constitute an adverse employment action. *See Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp.2d 699, 727–28 (S.D. Ohio 2011). Accordingly, Williams has failed to state a *prima facie* case for Counts 9 and 12.

Counts 11 and 16 relate to conflicts with Williams' coworkers. [DE 1]. Count 11 involves Williams' supervisor's untimely delivery of FMLA paper. [*Id.* at 12]. Count 16 relates to scrutiny and close supervision of his work while on light duty. [*Id.* at 14]. De minimis employment actions, such as late receipt of a memorandum or close supervision of Williams' work, do not constitute adverse employment actions. *Bowman*, 220 F.3d at 462. Moreover, "increased scrutiny of [plaintiff's] work" is "not tantamount to adverse employment actions." *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 169 (6th Cir. 2004). Williams has failed to state a *prima facie* case for Counts 11 and 16.

Counts 17 and 19 relate to Williams' request to transfer to different units. [DE 1]. Count 17 involves Williams' failure to obtain a SICU position for which he interviewed on May 23, 2014. [*Id.* at 15]. Count 19 relates to Williams' request for a new supervisor in a new position as an accommodation. [*Id.* at 16]. Williams conceded that the SICU position he applied for was a lateral position. [DE 51-4, Williams Dep. Tr. at 689]. In the Sixth Circuit, "a purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purposes, a conclusion consistent with the authority from our sister circuits." *Momah*, 239 F. App'x at 123. Moreover, courts have held that Williams' requested accommodation, "transfer to a new position under a new supervisor, is unreasonable as a matter of law." *Alsup v. U.S. Bancorp*, No. 2:14-CV-01515-KJM, 2015 WL 224748, at *8 (E.D. Cal. Jan. 15, 2015). Because Williams' requested accommodation was unreasonable, it could not constitute an adverse employment action. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885

(6th Cir. 1996).  Accordingly, Williams has failed to state a *prima facie* case for Counts 17 and 19.

Counts 21 and 22 relate to Williams' ergonomic evaluation and transfer to a different position.  [DE 1].  Count 21 alleges that he was not immediately accommodated after his supervisor received the results of his ergonomic evaluation.  [*Id.* at 17–18].  Williams concedes that his supervisor received the results of his evaluation on Friday, September 19, 2014, and that he accepted an accommodation on Monday, September 22, 2014.  [*Id.*].  Count 22 relates to his reassignment as a shuttle driver to accommodate his ergonomic evaluation.  [*Id.* at 18–19].  Neither of these Counts allege an adverse employment action.  *See Arendale*, 519 F.3d at 603.

Williams' supervisor received the results of his ergonomic evaluation on a Friday and he accepted an accommodation the very next business day.  [DE 1 at 17–18].  Requiring Williams to wait until the next business day before he was offered an accommodation amounts to little more than a "petty slight" or "minor annoyance" as opposed to an adverse employment action.  *See Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 348 (6th Cir. 2008).  Although the Sixth Circuit has held that a reassignment with significantly different responsibilities or a less distinguished title may constitute an adverse employment action, *see White*, 533 F.3d at 402, Williams' accommodation as a shuttle driver is distinguishable.

Williams accepted a temporary, light duty position as a shuttle driver to meet the requirements of his ergonomic evaluation.  Williams concedes that he accepted the position but contends that his acceptance was under duress.  [DE 1 at 18].  Williams testified that he had the option to stay in the MPU but chose to take the position as a shuttle driver.  [51-4, Williams Dep. Tr. at 724].  Emails between Windell and Williams also indicate that Williams not only inquired about the position as a shuttle driver but encouraged Windell to check on initiating his transfer to

the position.  [DE 51-1 at 559–561].  While in this temporary position, Williams maintained his title as an RN and did not receive a reduction in pay or benefits.  [*Id.* at 511].  Williams also testified that his new position as a shuttle driver accommodated his ergonomic issues and light duty classification.  [DE 51-4, Williams Dep. Tr.  at 725].

Based on the evidence presented by the parties, Williams has not created an issue of fact that would allow a reasonable juror to find that he did not voluntarily accept the shuttle driver position.  *See Liberty Lobby*, 477 U.S. at 252.  Even if Williams did not voluntarily accept the position, reassignment of an RN, where the RN retains their RN title, is not demoted, and does not suffer a reduction in pay does not constitute an adverse employment action.  *See, e.g.*, *Conner v. Nicholson*, No. 4:04-CV-100, 2006 WL 1722230, at *9 (W.D. Mich. June 21, 2006).  Moreover, allowing Williams to take the shuttle driver position was an attempt to meet Williams' necessary accommodations.  *See Amann v. Potter*, 105 F. App'x 802, 807–08 (6th Cir. 2004) (concluding that the transfer of the plaintiff to an air-conditioned facility because of heat exhaustion concerns was not an adverse employment action because the employer was merely accommodating the plaintiff's request to work in an air-conditioned facility).  Accordingly, Williams has failed to state a *prima facie* case for Counts 21 and 22 because he did not suffer and adverse employment action.

Count 23 alleges that four reports of contact were placed in Williams' file in violation of his union contract.  [DE 1 at 19].  Williams alleges that filing the reports of contact were in "clear violation of the AFGE Master Agreement Section 4 C."  [*Id.*].  Courts in the Sixth Circuit have held that "breach of a collective bargaining agreement by violation of hiring protocol is the subject of a union grievance, not a Title VII suit.  Violation of the collective bargaining agreement does not create a cause of action under Title VII."  *Warf v. U.S. Dep't of Veterans Affs.*, No. 09-14402, 2011 WL 5244827, at *5 (E.D. Mich. Nov. 3, 2011), *aff'd*, 713 F.3d 874 (6th Cir. 2013).  Williams

also failed to submit evidence that the reports of contact resulted in his termination, failure to promote demotion with a decreased salary, wages or less distinguished title, reassignment with significantly different responsibilities, or material loss of benefits. *White*, 533 F.3d at 402. Instead, Williams testified that his title and salary remained the same. [DE 51-4, Williams Dep. Tr. at 769–71]. Accordingly, Williams has failed to state a *prima facie* case for Count 23.

Count 25 relates to an investigatory meeting on April 13, 2015. [DE 1 at 20–21]. Williams was asked to attend this meeting to discuss statements he made during his interview for the PICC nurse position. [*Id.* at 21]. Williams concedes that the investigation concluded that there was no wrong-doing and no action was taken against him. [*Id.* at 22]. Even meetings at which an employer threatens adverse action or issues written corrective action are not adverse actions for purposes of retaliation claims under Title VII. *Dundee v. Univ. Hosps. Corp*, No. 1:19CV01141, 2020 WL 5997149, at *7–8 (N.D. Ohio June 26, 2020), *report and recommendation adopted*, No. 1:19-CV-1141, 2020 WL 4198891 (N.D. Ohio July 22, 2020). Merely conducting an investigation does not constitute an adverse employment action. *See Michael v. Caterpillar Fin. Servs. Corp*., 496 F.3d 584, 597 (6th Cir. 2007). Accordingly, Williams has failed to state a *prima facie* case for Count 25.

For the reasons stated above, Williams has failed to meet his burden to demonstrate a *prima facie* case for employment discrimination under Title VII. To the extent Williams alleges that he was constructively discharged [DE 52 at 943], such a theory requires that the employee quit. *See Moore v. KUKA Welding Sys. & Robot Corp*., 171 F.3d 1073, 1080 (6th Cir. 1999). Here, Williams claims he left the VA through disability retirement. [DE 52 at 943–44, 955–56]. Williams also failed to allege constructive discharge in his Complaint. [DE 1]. Williams is prohibited from asserting new claims in response to a motion for summary judgment. *See Tchankpa v. Ascena*

*Retail Grp., Inc.*, 951 F.3d 805, 817 (6th Cir. 2020).  Even if Williams could state a *prima facie* case, there is no evidence that he could carry his burden to show that the VA's legitimate, nondiscriminatory reasons for their actions were pretextual.  *See Burdine*, 450 U.S. at 253.  These legitimate, nondiscriminatory reasons range from persistent tardiness to failure to meet standard competencies.  [DE 53].  Therefore, the VA's Motion for Summary Judgment [DE 51] is **GRANTED** to the extent Williams alleges employment discrimination in Counts 1–25.

### D.  Retaliation for Protected Activities: Counts 4–7 and 9–25

Williams alleges he was retaliated against for engaging in protected activities for Counts 4–7 and 9–25.  [DE 1].  The VA has moved for summary judgment arguing that Williams' supervisors did not have knowledge of his protected activities.  [DE 51].

To establish a case for retaliation under Title VII, the plaintiff must show that "(1) plaintiff engaged in activity protected by Title VII; 2) plaintiff's exercise of his civil rights was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997).  Filing an EEO complaint is a protected activity.  *See Cook v. McHugh*, 193 F. Supp. 3d 866, 874 (M.D. Tenn. 2016).  The defendant must have had knowledge of the plaintiff's protected activity.  *See Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 386–87 & n. 3 (6th Cir. 1999) (en banc)).  Retaliation claims are analyzed using the *McDonnell Douglass* burden shifting framework.  *See Cook*, 193 F. Supp. 3d at 873.  The plaintiff bears the initial burden to establish a *prima facie* claim for retaliation by demonstrating each of the elements of the claim.  *See id.*

18

Here, Williams concedes that he first made contact with the EEO counselor on March 13, 2014.  [DE 51-3 at 573; DE 52 at 940].  Counts 4–7 occurred between March 5 and March 12, 2014.  [DE 1].  It would be impossible for the VA to retaliate against Williams because he had not yet engaged in protected conduct.  *Avery Dennison Corp.*, 104 F.3d at 860.  Similarly, Williams' EEO complaint was not received until May 28, 2014, indicating that his supervisors would not have had knowledge of the complaint until that date.  [DE 51-3 at 573].  However, Williams produced an email suggesting his supervisors had knowledge of his EEO complaint as early as March 31, 2014.  [DE 52-6].  Notwithstanding, Williams did not rebut the VA's evidence that his supervisors were unaware of the EEO complaint before March 31.  Counts 9–11 all involve events that occurred between March 17 and March 24.  [DE 1].  Williams has not presented evidence of a material fact that would allow a reasonable juror to rule in his favor as to his retaliation claims in Counts 4–7 and 9–11.  *See Liberty Lobby*, 477 U.S. at 252.

Counts 12–25 of Williams' Complaint must also fail because Williams did not produce evidence of an adverse employment action.  *See Avery Dennison Corp.*, 104 F.3d at 860.  In this context, a "materially adverse action does not include trivial harms, such as 'petty slights or minor annoyances that often take place at work and that all employees experience,'" and must be enough to have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Vaughn*, 302 F. App'x at 348 (quoting *White*, 548 U.S. at 68).  Moreover, Williams has not demonstrated "a causal connection between the protected activity and the adverse employment action." *Avery Dennison Corp.*, 104 F.3d at 860.  "To establish a causal connection, the plaintiff must establish that his or her protected activity was a 'but-for' cause of the alleged adverse action by the employer." *Cook*, 193 F. Supp. 3d at 873 (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

To avoid repeating itself, the Court reincorporates its analysis from Section III.C.i. regarding Counts 12–25.  The Court found that Williams failed to demonstrate a *prima facie* case because there was no evidence an adverse action had been taken against him.  Without an adverse action, there could not be a causal connection, which is required to state a *prima facie* case for retaliation.  *See Avery Dennison Corp.*, 104 F.3d at 860.  Moreover, the record does not reflect that Williams' supervisors made derogatory remarks about his engagement in a protected activity or possessed a retaliatory motive.  *See Cook*, 193 F. Supp. 3d at 874.  Accordingly, Williams has failed to state a *prima facie* case for retaliation.  The Court also notes that even if Williams could state a *prima facie* case, he has not produced evidence to suggest the VA's legitimate, nondiscriminatory reasons for its actions were pretextual.  *See Burdine*, 450 U.S. at 253. Therefore, The VA's Motion for Summary Judgment [DE 51] is **GRANTED** as to Counts 4–7 and 9–25 to the extent they allege retaliation for Williams' engagement in a protected activity.

### IV.    <u>CONCLUSION</u>

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.    The VA's Motion for Summary Judgment [DE 51] is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

November 10, 2022

20